UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | Case No. 4:07CR655 RWS (AGF) |
| JIMMY DALE SMITH, ) | |
| ) | |
| Defendant. ) | |

**REPORT AND RECOMMENDATION**
**OF UNITED STATES MAGISTRATE JUDGE**

This matter is before the Court on the pretrial motion filed by Defendant, Jimmy Dale Smith. Pretrial matters were referred to the undersigned United States Magistrate Judge under 28 U.S.C. § 636(b). Defendant filed a motion to suppress evidence and statements. (Doc. No. 19). An evidentiary hearing was held on February 27, 2008. The government was represented by Assistant United States Attorney Reginald Harris. Defendant was present and represented by his attorney, Assistant Federal Public Defender Brian Witherspoon. At the hearing, the government presented the testimony of Officer Steve Schwerb, who has been employed with the St. Louis Metropolitan Police Department (SLMPD) for approximately ten years, and Special Agent Alan Leah, with the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATFE). The witnesses were cross-examined by defense counsel. The parties were given leave to file post-hearing memoranda, after which the matter was taken under advisement. Based on the testimony

and evidence adduced and having had an opportunity to observe the demeanor and evaluate the credibility of the witnesses, the undersigned makes the following findings of fact and conclusions of law.

## FINDINGS OF FACT

On June 8, 2007, Officer Steve Schwerb received a radio call to respond to 4110 Ashlund, in connection with a report by a woman named Ms. Cain of an individual flourishing a handgun. At the time, Officer Schwerb was on duty, assigned to District 8, in the City of St. Louis, and was in uniform and alone in his patrol car. He arrived at the scene at approximately 9:00 p.m., and was met by Officer Timothy Wiechert, who was also in uniform. 4110 Ashlund is a four-family flat, located in an area known to the officers to be a high-crime area with reports of high violence. Upon their arrival, Officer Schwerb observed approximately 30 people in front of the building, both adults and children, many of whom were yelling and screaming.

As he got out of his patrol car, Officer Schwerb was able to connect with Ms. Cain in front of the building, perhaps based upon gestures or comments by her. She reported to him that there had been a big disturbance and that one individual had a gun. As she was speaking, an individual, later identified as Defendant Smith, walked out of the front door and onto the front porch of the four-family flat next door, at 4118 Ashlund. Ms. Cain pointed to Defendant Smith, who matched the description previously provided by her, and said that he was the one with the gun.

Officers Schwerb and Wiechert began to walk toward Defendant, who was still on

the front porch of 4118 Ashlund, and as they did so, he motioned for the officers to approach. As they approached Defendant on the porch of 4118 Ashland, neither officer displayed his firearm. Govt. Ex. 1 is a photograph of the front porch of the four-family flat. The front door of 4118 leads to a flat on the first floor, while the door at 4118A leads to the upstairs flat. After advising Defendant he was going to do so, Officer Schwerb patted Defendant down for officer safety, and did not find any firearms or weapons on his person. Officer Schwerb told Defendant what Ms. Cain had said, and he then advised Defendant of his rights under Miranda from a card that he keeps with him. At the hearing, Officer Schwerb read into the record the rights as he had so advised Defendant on the night in question.

Defendant stated that he understood his rights. The officers did not place Defendant in handcuffs or restrain him in any fashion and did not at any time display their firearms. Perhaps because there was still a lot of argument going on outside, Defendant asked the officers to come inside the apartment at 4118 Ashlund, which Defendant identified as his girlfriend's apartment, and they accompanied him inside. They did not observe anyone else inside the apartment. Between the time when the officers first approached Defendant and when they entered the apartment, only a few minutes had passed. Defendant, who was then 38 years old, did not appear to be under the influence of drugs or alcohol, was able to communicate clearly, and appeared to understand what was being said to him.

Once inside, Defendant advised the officers that there had been a disturbance

between his girlfriend's family and the residents of 4110 Ashlund. He said that he had gone out to try and keep the peace and had pretended to have a gun under his shirt. He explained that he had put his hand under his shirt and tried to make it appear as though he had a firearm in his waistband. Officer Schwerb asked if he had a firearm, and Defendant responded "Not in here." Defendant then added that he had a shotgun for protection, but that he kept it in the vacant apartment upstairs, stating, "I know not to have a gun where I sometimes sleep." Defendant opened a door at the back of the flat, which led to an interior stairwell, pointed up the stairs, indicating the upstairs flat, and said, "It's up there." The officers, who were following behind Defendant, saw him point up the stairwell.

Officer Schwerb walked up to the upstairs flat and entered through an open door. The flat looked as though it was being rehabbed. There were stacks of drywall, the plumbing had been gutted, and new plumbing was on the floor. In the living room closet he observed a 12 gauge shotgun. The officer could not recall whether the door to the closet had been open, or whether there was no door at all, but he was able to see the shotgun in plain view. He picked up the shotgun, which was loaded with four rounds. He unloaded the shotgun, and put the ammunition in his pocket. He then took the shotgun and returned downstairs.

Officer Schwerb then told Defendant he was going to go out and speak to Ms. Cain, and he went outside while Officer Wiechert and Defendant remained inside. He asked Ms. Cain to describe what had happened, and she advised Officer Schwerb that she

4

never actually saw a firearm. She admitted that Defendant had never pulled out a firearm and had not threatened her with a firearm.

Officer Schwerb returned to 4118 Ashlund and advised Defendant that, based on his conversation, there was no apparent law violations. As he was about to return the shotgun shells to Defendant, Defendant stated, "That's good, because I'm on federal parole." Upon hearing this, Officer Schwerb re-advised Defendant of his rights under Miranda, again reading from the card that he keeps with him. He asked Defendant what he had convictions for, and Defendant said he had been convicted for burglary, armed criminal action, and a "gun case from the feds." At this point, Officer Schwerb placed Defendant in handcuffs. He then transported him to the station, intending to detain Defendant pending a computer check of his criminal background. At the station, the officers verified Defendant's prior criminal convictions, and advised him he was under arrest. After he was placed in handcuffs, Defendant did not make any further statements.

In connection with the investigation, Special Agent Leah contacted the St. Louis City Assessor's Office, and learned that an individual named John Clemmons is identified as the owner of 4116 and 4118 Ashlund. See Gov't Ex. 2. He checked with Laclede Gas, and was advised that the gas company had no record of any utility activity in either the first or second floor of 4118 Ashlund, and that there had been no service since 2004. Union Electric also reported no electric activity in either of the units at 4118 Ashlund. There was a record of utility service to a John Clemmons at 4116 Ashlund. They also reported a record of service to a John or Sam Clemmons at 4118 Ashlund, but that was

5

for a time period prior to 2007. Neither utility company had any record of any service to Jimmy Dale Smith at 4118 Ashlund.

## CONCLUSIONS OF LAW

Defendant has filed a motion to suppress both the firearm seized and the statements made by Defendant. Specifically, Defendant asserts that the officers searched the residence and seized the firearm and arrested Defendant without a warrant, having already determined that no exigent circumstances existed. Citing to United States v. Wong Sun, Defendant asserts that the statements made under the circumstances of his arrest should be suppressed. The Court finds no merit in Defendant's assertions.

**A. Initial Encounter with Defendant**

Here, the encounter with Defendant on the front porch began as a consensual encounter. Consensual encounters between police and private citizens do not implicate the Fourth Amendment. Florida v. Bostick, 501 U.S. 429, 434 (1991); Florida v. Royer, 460 U.S. 491, 497 (1983); United States v. Dupree, 202 F.3d 1046, 1049 (8th Cir. 2000). "A Fourth Amendment 'seizure' does not occur merely because a police officer requests permission to search an area or poses other questions to a citizen." United States v. Jones, 269 F.3d 919, 925 (8th Cir. 2001); United States v. Woods, 213 F.3d 1021, 1023 (8th Cir. 2000) (citing United States v. Guerrero-Hernandez, 95 F.3d 983, 986 (10th Cir. 1996) (consensual encounter does not become custodial simply because individual being questioned is the target of an investigation)); United States v. Ward, 23 F.3d 1303, 1305-06 (8th Cir. 1994). See also, United States v. Davis, 202 F.3d 1060, 1063 (8th Cir. 2000)

6

(whether officer had reasonable suspicion for investigative stop "became academic" when defendant agreed to answer questions). Such encounters do not require any degree of suspicion. Bostick, 501 U.S. at 435; Florida v. Rodriguez, 469 U.S. 1, 5-6 (1984).

There is no bright line distinguishing a consensual encounter from a Terry stop; the determination is a fact-intensive one that turns on the facts of the particular case. United States v. Beck, 140 F.3d 1129, 1135 (8th Cir. 1998); United States v. Hathcock, 103 F.3d 715, 718 (8th Cir. 1997). As the court noted in United States v. White, 81 F.3d 775 (8th Cir. 1996):

> A seizure does not occur simply because a law enforcement officer approaches an individual and asks a few questions or requests permission to search an area – even if the officer has no reason to suspect the individual is involved in criminal activity – provided the officer does not indicate that compliance with his request is required.

Id. at 779.

The determination of whether an encounter is consensual turns on whether the questioning is so "intimidating, threatening or coercive that a reasonable person would not have believed himself free to leave." United States v. McKines, 933 F.2d 1412, 1419 (8th Cir. 1991) (en banc). Factors include "the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled." White, 81 F.3d at 779 (citations omitted).

The encounter here was a consensual one. In response to a call, the officers merely responded to the scene and spoke to the complaining witness, who identified

7

Defendant as the individual who had had the firearm. At that point, Defendant invited the officers to speak to him, and thereafter, asked them inside. The consensual encounter did not become custodial simply because the defendant was the target of an investigation. Woods, 213 F.3d at 1022. Nor was it transformed into a Terry stop by either requesting consent to search or conducting a brief pat-down search.[1] See Davis, 202 F.3d at 1062.

Even if the encounter could be construed as an investigatory detention – and the Court does not find that it was – the officers here had reasonable, articulable suspicion to believe that a crime had been or was being committed. See United States v. Olson, 262 F.3d 795, 798 (8th Cir. 2001) (holding that a call from a citizen, who was willing to meet with police, and who provided details causing her to suspect individuals of bank robbery, as well as a description of their vehicle and location, was sufficient to provide reasonable suspicion to stop a van, order the driver out, and conduct pat-down search); United States v. Christmas, 222 F.3d 141, 144 (4th Cir. 2000) (tip received from neighbor in face-to-

---

[1] The Court notes that Defendant has not independently challenged the pat-down conducted of Defendant. In any event, here the officer advised Defendant they wanted to conduct a pat-down, and Defendant did not object. Under these circumstances, the Court finds the pat-down was consensual. United States v. Sturgis, 238 F.3d 956, 959 (8th Cir. 2001); United States v. Martin, 982 F.2d 1236, 1239 (8th Cir. 1993). Even without consent, however, the officers were justified under the circumstances in conducting a pat-down for officer safety. Defendant had been identified by an eyewitness as an individual who had possessed a firearm during a large altercation. It was nighttime, in a high crime area, and the altercation appeared still to be on-going, as there were still dozens of people around yelling and screaming. Under these circumstances, the officers had reasonable suspicion to believe that a crime had been committed and that Defendant might be armed. They were therefore justified in conducting a pat-down for officer safety and to preserve the status quo while they conducted their investigation. United States v. Roggeman, 279 F.3d 573, 577-78 (8th Cir. 2002); Davis, 202 F.3d at 1063.

face encounter provided reasonable suspicion for investigatory stop and protective pat-down of defendant). Apart from conducting the protective pat-down – after which Defendant invited the officers inside – there was not any force whatsoever exerted against Defendant. Once inside, the officers thereafter did no more than advise Defendant of the accusation made and make inquiries directly related thereto.

### B. Questioning of Defendant

Until Defendant was actually placed in handcuffs, he was not in custody. As such, there was no requirement that Defendant be advised of his rights under Miranda. See California v. Beheler, 463 U.S. 1121, 1125 (1983) (recognizing that suspect is not in custody simply because questioning took place at police station, and holding that Miranda warnings were not required when Defendant voluntarily accompanied police to station, talked to police for 30 minutes, and was permitted to leave); United States v. Galceran, 301 F.3d 927, 930-31 (8th Cir. 2002) (Miranda warning not required because defendant voluntarily went to police station upon request, was told he would not be arrested that day, was not interviewed in holding cell area, and was not arrested at conclusion of ninety-eight minute interview).

The officers nonetheless advised him of his rights prior to any questioning. Only a brief discussion transpired thereafter, and Defendant was not threatened, forced, or restrained in any fashion. As such, under any analysis, Defendant's statements to the police regarding his actions in pretending to possess a firearm and his response stating that he did possess a shotgun and identifying its location, were voluntary and are not

9

subject to suppression.

### C. Search of Upstairs Apartment

Although Defendant challenges the search of the upstairs apartment and the seizure of the firearm located there, as a threshold matter, it does not appear that Defendant had a sufficient privacy interest in the premises to support such a challenge. While the government bears the burden to demonstrate an exception to the warrant requirement where police conduct a warrantless search, the defendant first bears the burden to demonstrate that he had a legitimate expectation of privacy in the area searched. Florida v. Riley, 488 U.S. 445, 455 (1989) (O'Connor, J., concurring); United States v. Mendoza, 281 F.3d 712, 715 (8th Cir. 2002); United States v. Pierson, 219 F.3d 803, 806 (8th Cir. 2000); United States v. Dickson, 58 F.3d 1258, 1264 (8th Cir. 1995). That burden is met by showing "both a subjective expectation of privacy and that the expectation is objectively reasonable; that is, one that society is willing to accept." Mendoza, 281 F.3d at 715 (quoting United States v. McCaster, 193 F.3d 930, 933 (8th Cir. 1999)); see Katz v. United States, 389 U.S. 347, 361 (1967) (Harlan, J., concurring). When a defendant does not possess a sufficient privacy interest in the premises, he or she may not contest its search. See Minnesota v. Carter, 525 U.S. 83, 90 (1998) (neither individuals who visit the home of another without spending the night nor individuals who visit the apartment of another to package cocaine, possess a sufficient privacy interest to raise Fourth Amendment interests); Sturgis, 238 F.3d at 958-59 (defendant who visited motel room of another to engage in distributing controlled substances lacked reasonable

expectation of privacy to trigger Fourth Amendment).

A defendant who "fails to prove a sufficiently close connection to the relevant places or objects searched . . . has no standing to claim that they were searched or seized illegally." Unites States v. Gomez, 16 F.3d 254, 256 (8th Cir. 1994).

> Factors relevant to the determination of standing include: ownership, possession and/or control of the area searched or item seized; historical use of the property or item; ability to regulate access; the totality of the circumstances surrounding the search; the existence or nonexistence of a subjective anticipation of privacy; and the objective reasonableness of the expectation of privacy considering the specific facts of the case.

Pierson, 219 F.3d at 806 (quoting Gomez, 16 F.3d at 256). Elsewhere, the Eighth Circuit has described the analysis as a two-part test that requires the defendant to show both (1) a subjective expectation of privacy and (2) that the expectation is objectively reasonable, or "one that society is willing to accept." McCaster, 193 F.3d at 933; accord United States v. Stallings, 28 F.3d 58, 60 (8th Cir. 1994). Among the facts relevant to the showing are "whether the party has a possessory interest in the things seized or the place searched; whether the party can exclude others from that place; whether the party took precautions to maintain the privacy; and whether the party had a key to the premises." McCaster, 193 F.3d at 933. To meet the first part of the test with regard to the items seized, the defendant must show by his conduct that he sought to preserve the item as private. Stallings, 28 F.3d at 60.

Under most circumstances a defendant lacks standing to challenge the search of another person's premises. See United States v. Rodriguez-Arreola, 270 F.3d 611, 616

11

(8th Cir. 2001) (challenged conduct must invade the defendant's legitimate expectation of privacy rather than third party); United States v. Davis, 103 F.3d 660, 671 (8th Cir. 1996); United States v. Jones, 16 F.3d 275, 279 (8th Cir. 1994). Fourth Amendment rights are personal and cannot be asserted vicariously. Rakas v. Illinois, 439 U.S. 128, 133 (1978); United States v. Pierson, 219 F.3d at 806; United States v. Gomez, 16 F.3d 254, 256 (8th Cir. 1994). Cf. Minnesota v. Olson, 495 U.S. 91, 96-97 (1990) (status as overnight guest created reasonable expectation of privacy); Rakas, 439 U.S. at 142 & n.10-11 (casual visitor has lesser expectation of privacy, but may also challenge a search if his own property is seized).

Here Defendant has not established that he had a sufficient privacy interest in even the downstairs apartment. It was not leased in his name and the utilities were not registered to him or even to his girlfriend. Even if one accepts Defendant's own statements, the apartment was his girlfriend's and he just stayed there sometimes. In any event, assuming arguendo Defendant could assert a privacy interest in the downstairs apartment, he plainly had no such claim to the upstairs apartment, where the firearm was found. There is no evidence to suggest his girlfriend had any privacy interest in the upstairs flat: it was owned by another; no utilities were registered to the flat; it was plainly under renovation; and even Defendant described it as "vacant." See McCaster, 193 F.3d at 933 (no legitimate expectation of privacy in hall closet where located outside defendant's apartment, defendant disavowed possessory interest in contents, and other tenants and landlord had access to closet); United States v. McRae, 156 F.3d 708, 711

12

(6th Cir. 1998) (no subjective expectation of privacy in vacant house where defendant did not own or rent house, was there for limited period, and condition of house did not indicate permanent occupation). And if he took steps to keep private the shotgun which he left in the vacant upstairs flat, he has failed to make such a showing. See McCaster, 193 F.3d at 933; Stallings, 28 F.3d at 61.

Even if the Court were to assume Defendant had a sufficient privacy interest in the premises or the firearm, here the officers were reasonable in believing Defendant provided consent to search the upstairs for the firearm. As the government correctly notes, "[t]he precise question is not whether [defendant] consented subjectively, but whether his conduct would have caused a reasonable person to believe that he consented." United States v. Welerford, 356 F.3d 932, 935 (8th Cir. 2004) (quoting United States v. Jones, 254 F.3d 692, 695 (8th Cir. 2001); United States v. Sanchez, 156 F.3d 875, 878 (8th Cir. 1998). Here, Defendant opened the door to the stairway, pointed up the stairs, and advised the officers that the shotgun was upstairs in a closet. When the officer followed his lead and went upstairs to retrieve the firearm, Defendant did not voice any objections. Under these circumstances, the officers were reasonable in believing that Defendant had provided his consent to search the upstairs for the firearm. United States v. Williams, 346 F.3d 796, 799 (8th Cir. 2003) (finding defendant's gestures reasonably viewed as consent to search); United States v. Mendoza-Cepeda, 250 F.3d 626, 627-29 (8th Cir. 2001) (same). And there is nothing on this record to suggest that the consent was anything but voluntary and freely given. Schneckloth v.

13

Bustamonte, 412 U.S. 218, 227 (1973); United States v. Alcantar, 271 F.3d 731, 737 (8th Cir. 1997); United States v. Chaidez, 906 F.2d 377, 381 (8th Cir. 1990). Defendant is an adult, with prior experience with law enforcement. At the time, he did not appear to be impaired in any fashion, and had been advised of his rights under Miranda. Defendant was not under arrest, and no force or threats had been exerted. As such, any challenge to the search of the upstairs apartment for the shotgun should be rejected.

### D. Seizure of the Shotgun

Having located a loaded shotgun, the officers were justified in rendering the firearm safe, and seizing it as a safety precaution while they completed their investigation. See Coolidge v. New Hampshire, 403 U.S. 443, 468 (1971); United States v. Pillow, 842 F.2d 1001, 1004 (8th Cir. 1988).

### E. Defendant's Statements After Seizure of the Shotgun

Defendant does not appear to challenge the voluntariness of the statements made by him. Rather, citing only to Wong Sun,[2] Defendant presumably is asserting that his statements should be suppressed as the fruit of the unlawful entry, search and seizure. Inasmuch as the officers had proper authority to enter the premises identified as Defendant's girlfriend's apartment, and also to proceed upstairs to locate the shotgun of which Defendant advised them, Defendant's motion to suppress his statements following the search must also fail.

---

[2] Defendant was afforded the opportunity to file a post-hearing memorandum but did not do so.

In any event, the Court finds that the statements made by Defendant were wholly voluntary. Indeed, Defendant's statement regarding his parole status was not even in response to any interrogation. Rather it was volunteered by Defendant after the officer advised him there was no violation and was about to return the shotgun shells to him. Statements that are volunteered are not subject to suppression. See Rhode Island v. Innis, 446 U.S. 291, 300-01 (1980); United States v. Lockett, 393 F.3d 834, 838 (8th Cir. 2005) (advising the defendant they were looking for him when he asked why the officers were there and explaining what defendant was suspected of are not the functional equivalent of interrogation); United States v. Hawkins, 102 F.3d 973, 975 (8th Cir. 1996) (no "interrogation" where defendant's statement is prompted by discovery of cocaine).

After he volunteered that he was on parole, the officers readvised Defendant of his Miranda rights and inquired what he was on parole for. His statement identifying the nature of his prior convictions is also not subject to suppression. A defendant may knowingly and intelligently waive his rights and agree to answer questions. Miranda v. Arizona, 384 U.S. 436, 479 (1966). When the prosecution seeks to introduce in evidence a statement made by a defendant while in custody, it has the burden of showing by a preponderance of the evidence that the statement was made after a voluntary, knowing, and intelligent waiver of Miranda rights by the defendant. Colorado v. Connelly, 479 U.S. 157, 168 (1986). The court must examine the totality of the circumstances surrounding the interrogation to determine whether the waiver was the product of a free and deliberate choice, rather than intimidation, coercion, or deception, and whether the

15

waiver was made with an awareness of the right being abandoned and the consequences of the decision to abandon it. Moran v. Burbine, 475 U.S. 412, 421 (1986). See also United States v. LeBrun, 363 F.3d 715, 724 (8th Cir. 2004) (en banc). "A waiver is knowing if it is 'made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it.' It is voluntary if it is 'the product of a free and deliberate choice rather than intimidation, coercion, or deception.'" United States v. Syslo, 303 F.3d 860, 865 (8th Cir. 2002) (citations omitted) (quoting Moran, 475 U.S. at 421); accord United States v. Turner, 157 F.3d 552, 555 (8th Cir. 1998) (noting two distinct dimensions of the inquiry). The statement must be voluntary, and not the product of any police conduct by which the defendant's will is overborne. Connelly, 479 U.S. at 170; Haynes v. Washington, 373 U.S. 503, 513 (1963).

"The requirement that Miranda warnings be given does not, of course, dispense with the voluntariness inquiry." Dickerson v. United States, 530 U.S. 428, 444 (2000). As the Supreme Court has recognized, however, "[c]ases in which a defendant can make a colorable argument that a self-incriminating statement was 'compelled' despite the fact that law enforcement authorities adhered to the dictates of Miranda, are rare." Id. (quoting Berkemer v. McCarty, 468 U.S. 420, 433 n. 20 (1984)).

Before making this statement, Defendant, who at the time was an adult, approximately 39 years old, had twice been advised of his rights under Miranda. As discussed above, Defendant had had previous experience with law enforcement, did not appear to be under the influence of drugs or alcohol, and appeared to understand what

16

was said to him. Defendant was not restrained in any fashion, and no promises, force or threats had been made to induce Defendant's waiver or his statements. As such, like his other statements, the Court finds that Defendant's statements following the seizure of the firearm and prior to his formal arrest were voluntary and are not subject to suppression. Following his arrest, Defendant made no further statements.

**F. Arrest of Defendant**

Police officers may make a warrantless arrest when they have probable cause to believe a person has committed a felony. Probable cause exists "when at the moment of arrest police have knowledge of facts and circumstances grounded in reasonably trustworthy information sufficient to warrant a belief by a prudent person that an offense has been or is being committed by the person to be arrested." United States v. Oropesa, 316 F.3d 762, 768 (8th Cir. 2003) (quoting United States v. Hartje, 251 F.3d 771, 775 (8th Cir. 2001); accord United States v. Travis, 993 F.2d 1316, 1323-24 (8th Cir. 1993) (citing Beck v. Ohio, 379 U.S. 89, 91 (1964)). The test is an objective one. Probable cause may be found "if the facts and circumstances within the [law enforcement] officer's knowledge . . . are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing or is about to commit an offense." United States v. Morales, 923 F.2d 621, 623 (8th Cir. 1991) (quoting Michigan v. DeFillippo, 443 U.S. 31, 37 (1979)).

Prior to Defendant's arrest, the officers had located a loaded shotgun, which Defendant admitted he owned and which the officers located exactly where Defendant

17

said it would be. As such, once Defendant admitted to the officers that he had a prior felony conviction, the officers had probable cause to arrest Defendant for being a felon in possession of a firearm.

Accordingly,

**IT IS HEREBY RECOMMENDED** that Defendant's Motion to Suppress Evidence and Statements [Doc. No. 19] be **Denied**.

Trial in this matter has been scheduled for **May 5, 2008 at 9:00 a.m.** before the **Honorable Rodney W. Sipple**.

The parties are advised that they have eleven (11) days in which to file written objections to this report and recommendation pursuant to 28 U.S.C. §636(b)(1), unless an extension of time for good cause is obtained, and that failure to file timely objections may result in a waiver of the right to appeal questions of fact. See Thompson v. Nix, 897 F.2d 356 (8th Cir.1990).

/s/ Audrey G. Fleissig
AUDREY G. FLEISSIG
UNITED STATES MAGISTRATE JUDGE

Dated this 18th day of March, 2008.